IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MOTA,<br><br>Plaintiff,<br><br>v.<br><br>DR. MATTHEW E. DOSCHER, DR. JIMMIE KNIGHT, COOK COUNTY SHERIFF THOMAS J. DART, COOK COUNTY, and JOHN DOEs,<br><br>Defendants. | ) | Case No. 25 C 6475<br><br>Judge Robert W. Gettleman |

**MEMORANDUM OPINION & ORDER**

Plaintiff Christopher Mota is a pre-trial detainee at Cook County Jail. He has sued defendants Dr. Matthew E. Doscher, Dr. Jimmie Knight, Cook County Sheriff Thomas J. Dart, Cook County, and John Does for, among other things, violating his constitutional and federal rights. According to his complaint, plaintiff has been in Cook County Jail since in 2021. He alleges that he broke his arm in July 2023, and that his arm is still broken today because Doscher (an orthopedic surgeon) and Knight (a general surgeon) failed to properly treat him, and because the John Does (agents or employees of the jail) took away a hard cast for his arm and refused to transfer him to a different Division in the jail—one reserved for detainees with serious medical conditions.

The complaint asserts seven counts: a claim against Doscher and Knight under 42 U.S.C. § 1983 for violating the Fourteenth Amendment by delaying and denying him medical care (Count I); a claim against Doscher and Knight for medical malpractice (Count II); a claim against the John Does under § 1983 for violating the Fourteenth Amendment “for punishment

without due process" and "poor conditions of confinement" (Count III); a claim for "injunctive relief only" against Dart under § 1983 for violating the Fourteenth Amendment (Count IV); a claim against Dart and the John Does for violations of Title II of the Americans with Disabilities Act ("ADA") (Count V); a claim against Dart for violations of the Rehabilitation Act (Count VI); a claim against Cook County for indemnification under Illinois law (Count VII); and a claim against Cook County for respondeat superior liability for medical malpractice (Count VIII).

Doscher, Knight, and Cook County have since answered the complaint. Dart has moved to dismiss Counts IV-VI under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons below, the court grants in part and denies in part Dart's motion.

## BACKGROUND

Plaintiff alleges the following facts in his complaint, which are taken as true in resolving defendant's motion. Alam v. Miller Brewing Co., 709 F.3d 662, 665-66 (7th Cir. 2013). In 2020, Illinois charged defendant (then 17 years old) as an adult for first degree murder. Since February 2021, plaintiff has been housed as a pre-trial detainee in Division 9 of the jail—"a notoriously violent section intended to hold inmates with allegedly higher security concerns."

On July 8, 2023, plaintiff fractured his forearm. Several days later, Doscher performed surgery to put the bone back together, inserting a metal plate at the fracture site to hold the bone together while it healed. But Dosher used only 4 screws (not 6) on a plate that was too small and had insufficient mechanical grip, creating a substantial risk that the plate would fail.

And so it did. Indeed, a June 2024 CT scan revealed as much. It also showed that the fracture remained unhealed. So in August 2024, plaintiff met again with Doscher, who blamed plaintiff for the problem, attributing it to plaintiff getting into fights. That same month, Doscher

(accompanied by Knight) removed the broken plate and inserted a thin metal pin across the fracture to hold it together while the bone healed. But their work "violated the standard of care."

Plaintiff then met with Doscher again a month later, explaining that he felt acute pain in his arm. Doscher responded, telling plaintiff he needed to stop getting into fights, and declining to do another surgery.

In October 2024, an attending physician at the hospital where Doscher and Knight work removed the pin and put plaintiff's arm in a hard cast. When plaintiff returned to jail, however, the John Does took away the cast. They also refused his multiple requests to be transferred to Division 8, which houses "pre-trial detainees with serious medical needs," and which is less violent than Division 9.

In July 2025, plaintiff again saw Doscher, where he told Doscher that he thought he needed surgery to address his still-broken arm. But Doscher told plaintiff that he would need to remove a piece of plaintiff's hip bone to perform a second surgery, and that the risk of harm may outweigh the benefits. X-rays show that plaintiff's arm remains fractured. Plaintiff's arm has thus "been continuously fractured since July 2023," and "[h]e experiences severe pain and struggles to perform basic tasks of daily life, including brushing his teeth, handwriting, or carrying a food tray."

So plaintiff sued defendants for redress and injunctive relief, bringing claims against Doscher and Knight and the John Does in their "individual capacities," against Dart in his "official capacity," and against Cook County. As for Dart in particular, plaintiff asserts claims against him under § 1983 (Count IV), the ADA (Count V), and the Rehabilitation Act (Count VI).

## DISCUSSION

Dart moves to dismiss the three counts against him under Rule 12(b)(6). Rule 12(b)(6) provides for dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8 "prescribes the information [that] a plaintiff must present about the merits of his claim at the outset of litigation: 'a short and plain statement of the claim showing that [he] is entitled to relief.'" Berk v. Choy, 607 U.S. 187, 193 (2026) (quoting Fed. R. Civ. P. 8(a)(2) (second bracket in original)). So to rule on a Rule 12(b)(6) motion, the court must determine whether the plaintiff has adequately presented a statement of the claim that shows entitlement to relief.

To do so, the court "asks only whether the complaint's factual allegations, if taken as true, 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Id. at 679 (cleaned up). In other words, a claim for relief "cannot be merely conceivable or speculative." Taylor v. Salvation Army Nat'l Corp., 110 F.4th 1017, 1028 (7th Cir. 2024). The plaintiff must instead "present a story that holds together"—with "sufficient details to make the plaintiff['s] account one that *could* have happened and, if it did happen, states a claim cognizable under the governing law." Id. (cleaned up) (emphasis in original).

In determining whether the plaintiff has presented such a story, the court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements." Alam, 709 F.3d at 666 (citation omitted). Put simply: "a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

The court must also "understand" the law "on which the claims of the complaint are predicated." Taylor, 110 F.4th 1028. This means that the court must review the relevant statutes to see if the plaintiff's story falls within the scope of what those statutes protect and "gives adequate notice" to the defendant "of the gravamen of the plaintiff['s] grievance." Id. At the same time, the court must be mindful that the Federal Rules "do not require code pleading"—that is, "plead[ing] the elements of a cause of action along with facts supporting each element." Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana, 786 F.3d 510, 517 (7th Cir. 2015). Indeed, "[t]hat something must be proved (if plaintiff is to win) does not imply that it must be alleged in the complaint." Hudson v. Am. Airlines, Inc., 812 F. Supp. 3d 828, 834 (N.D. Ill. 2025) (quoting Thomas v. JBS Green Bay, Inc., 120 F.4th 1335, 1338 (7th Cir. 2024)).

In the end, the "plausibility" "principle does not, and under the strictures of Rule 8 cannot, present a high barrier to the pleader." Taylor, 110 F.4th at 1028. As the Supreme Court put it in Berk: "By design, this system of pleading makes it relatively easy for plaintiffs to subject defendants to discovery—even for claims that are likely to fail." 607 U.S. at 194. The Court thus concluded: "Unless the Federal Rules single out a claim for special treatment, see, *e.g.*, [Rule] 9, Rule 8 sets a ceiling on the information that plaintiffs can be required to provide about the merits of their claims." Id.

With these principles in mind, the court turns to the three counts at issue.

**Count IV (§ 1983 Claim)**

Section 1983 "provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States." Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002). "The Due Process Clause of the Fourteenth Amendment [of the United States Constitution] imposes obligations on government officials to safeguard the health and safety of pretrial detainees," like plaintiff, "and section 1983 provides a cause of action for detainees . . . to vindicate those constitutional guarantees." Gonzalez v. McHenry Cnty., Illinois, 40 F.4th 824, 827 (7th Cir. 2022). To establish a § 1983 claim, a plaintiff generally must prove two things: (1) that "the conduct complained of was committed by a person acting under color of state law"; and (2) that "this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Strasburger v. Bd. of Educ., Hardin Cnty. Cmty. Unit Sch. Dist. No. 1, 143 F.3d 351, 355 (7th Cir. 1998) (citation omitted).

As for the "person," "[m]ost inmates who believe their right to health care has been violated . . . seek damages from individual doctors or other health care professionals, or from correctional staff who might have ignored or interfered with the inmates' efforts to seek the health care they need." Daniel v. Cook Cnty., 833 F.3d 728, 733 (7th Cir. 2016). Plaintiff here is no exception: he asserts § 1983 claims against Doctors Doscher and Knight (Count I), and against the John Does (Count III)—all in their "individual capacities."

But "individual defendants can defend themselves by shifting blame to other individuals or to problems with the 'system,' particularly where no one individual seems to be responsible for an inmate's overall care." Id. at 733-34; see also id. at 734 (explaining that "a common scenario" is that "an institution structured its affairs so that no one person was responsible for the

inmate's care, and such diffused responsibility can make it very difficult to show individual responsibility for health care failures" (cleaned up)). So plaintiffs sometimes also sue the county or county sheriff.

Plaintiff appears to have taken this route with Count IV, in which he asserts that Sheriff Dart is liable under § 1983 for violating his right to health and safety. In particular, he alleges that "Dart must provide adequate medical care that comports with the Fourteenth Amendment," but that Dart "failed to fulfill that duty" and "continues to fail" to do so: "Plaintiff, a victim of medical malpractice, remains injured in the Cook County Jail, which Dart controls, with a fractured forearm that remains untreated." And so, plaintiff avers, he has "suffered and will continue to suffer irreparable injury because of Dart's unlawful acts, omissions, policies, and practices."

Unlike with the doctors, though, plaintiff seeks "injunctive relief only" from Dart, and expressly "brings [his] claims against Dart in his official capacity." The "person" that plaintiff alleges committed the complained-of conduct to support his § 1983 claim in Count IV, then, is really the governmental entity that employs the sheriff—not Dart himself. Indeed, "an official capacity suit is another way of pleading an action against an entity of which the officer is an agent." <u>Sow v. Fortville Police Dep't</u>, 636 F.3d 293, 300 (7th Cir. 2011). That means that plaintiff's claim against Sheriff Dart under § 1983 is "governed by the municipal liability standards governing" what are known as "*Monell* claims"—named after <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658 (1978). <u>Shultz v. Dart</u>, No. 13 C 3641, 2013 WL 5873325, at *3 (N.D. Ill. Oct. 31, 2013); <u>see also Est. of Sims ex rel. Sims v. Cnty. of Bureau</u>, 506 F.3d 509, 514

(7th Cir. 2007) (stating that a sheriff's "official-capacity liability is subject to holding in [*Monell*]").[1]

Whether Plaintiff has Plausibly Pleaded a Monell Claim

The Supreme Court held in Monell that a governmental entity is a "person" who may be sued under § 1983. Thomas v. Neenah Joint Sch. Dist., 74 F.4th 521, 523 (7th Cir. 2023). But there is a caveat: a governmental entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694 (emphasis added). In other words, governmental entities "cannot be held vicariously liable for the constitutional torts of their employees," and can instead "be sued only for their own violations of federal law." Thomas, 74 F.4th at 523. The upshot of this is that a "government as an entity is responsible under § 1983" only when "the execution of a government's policy or custom"—"whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy"—is what "inflicts the injury" on the plaintiff. Monell, 436 U.S. at 694. And "claims for prospective relief [which would include plaintiff's claim for injunctive relief here], like money damages, fall

---

[1] For their part, neither party expressly states that Count IV is a "Monell claim." Yet both parties rely on cases that make clear that a § 1983 claim against Dart in his official capacity—like plaintiff's claim here—is governed by Monell. See, e.g., Harris v. Dart, No. 20 C 7602, 2023 WL 2988816, at *5 (N.D. Ill. Apr. 18, 2023) (the plaintiff sought "to hold Dart liable in his official capacity for injunctive relief only," and the court allowed this "*Monell* medical care claim to proceed against Dart in his role as Harris' custodian"); Henneberg v. Dart, No. 19 C 7380, 2021 WL 3883081, at *1 & 4 (N.D. Ill. Aug. 31, 2021) (the plaintiff brought his "suit against Defendant[ ] Cook County Sheriff Thomas Dart, in his official capacity," and the court analyzed claim against Dart under Monell); Jones v. Barber, No. 17-CV-07879, 2020 WL 1433811, at *3 (N.D. Ill. Mar. 24, 2020) (the "liability of the Sheriff's Department and of the County is derivative of [Dart's and Walsh's] official-capacity liability, and the official-capacity liability is subject to [the] holding in *Monell*" (citations omitted) (brackets in original)).

.

within the scope of [Monell's] 'policy or custom' requirement." Los Angeles Cnty., Cal. v. Humphries, 562 U.S. 29, 37 (2010).

"In the wake of *Monell*, a highly complex body of interpretive law on when plaintiffs can establish a municipal policy or custom developed." Williams v. City of Waukegan, No. 20 C 6409, 2026 WL 2185190, at *4 (N.D. Ill. July 29, 2026) (cleaned up) (citing Mendoza v. City of Chi., No. 23 CV 2441, 2026 WL 1693582, at *2 (N.D. Ill. June 11, 2026)). "This has led to the current Seventh Circuit framework, under which, to establish a § 1983 Monell claim against a municipality, a plaintiff must prove: (1) that she was deprived of a constitutional right; (2) that the deprivation can be traced to some municipal action or inaction (i.e., a policy or custom), such that the challenged conduct is properly attributable to the municipality itself; (3) that the policy or custom demonstrates municipal fault, i.e., deliberate indifference; and (4) that the municipal action or inaction was the moving force behind the federal-rights violation." Id. (cleaned up) (citing Dean v. Wexford Health Sources, Inc., 18 F.4th 214, 235 (7th Cir. 2021)); see also Thomas, 74 F.4th at 524 (explaining that for "a *Monell* claim to survive a motion to dismiss, a plaintiff must plead facts that plausibly suggest" these four elements). "All four elements 'must be scrupulously applied to avoid a claim for municipal liability backsliding into an impermissible claim for vicarious liability.'" Williams, 2026 WL 2185190, at *4 (quoting Thomas, 74 F.4th at 524).

Plaintiff here has failed to plausibly allege facts that suggest that any violation of his Fourteenth Amendment right to health and safety can be traced to some governmental policy or custom. The policy-or-custom requirement is "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality and to limit liability to action for which the municipality is actually responsible." Bradley v. Vill. of Univ. Park, Ill., 929 F.3d 875, 884 (7th

Cir. 2019) (cleaned up) (emphasis in original). "The critical question under *Monell*," then, "is whether a municipal . . . policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." Glisson v. Ind. Dep't of Corr., 849 F.3d 372, 379 (7th Cir. 2017) (en banc).

To show that a municipal policy gave rise to the harm, a plaintiff "must show that the tort was committed (that is, authorized or directed) at the policymaking level of government—by the city council, for example, rather than by the police officer who made an illegal arrest." Vodak v. City of Chi., 639 F.3d 738, 747 (7th Cir. 2011). To show that the tort was committed at the policymaking level, a plaintiff generally must show that the constitutional deprivation was caused in one of three ways: (1) by "an express policy"; (2) by "a widespread practice that is so permanent and well-settled that it constitutes a custom or practice"; or (3) by an act of "a person with final policymaking authority." Thomas, 74 F.4th at 524 (citation omitted); see also Betts v. Boone Cnty., Illinois, 178 F.4th 1051, 1056 (7th Cir. 2026). "Courts have also recognized a fourth way: showing that the deprivation was caused by the municipality failing to properly screen, hire, train, or supervise its employees." Williams, 2026 WL 2185190, at *4 (cleaned up).

Plaintiff has not alleged facts that could support a reasonable inference that his alleged constitutional deprivation was caused in any of these ways. As an initial matter, plaintiff's conclusory allegation that Dart has employed "unlawful acts, omissions, policies, and practices" at most amounts to a recitation of "legal elements"—"not factual allegations"—"and as such contribute nothing to the plausibility analysis." McCauley v. City of Chicago, 671 F.3d 611, 618 (7th Cir. 2011) (affirming dismissal of Monell claim).

Turning to the four pathways, plaintiff does not allege that there was an express policy. Nor does he allege that Dart failed to properly train or supervise his employees. And although

"[a]n Illinois county sheriff is a proper party for a *Monell* liability claim because he has final policymaking authority over jail operations," Gonzalez, 40 F.4th at 829 n.3, plaintiff has not alleged that Dart himself took any particular action (or rendered any specific decision) as to plaintiff. See Inendino v. Lightfoot, No. 22 C 04982, 2023 WL 2349909, at *5 (N.D. Ill. Mar. 3, 2023) (because the plaintiff had "not adequately alleged [the Mayor]'s personal involvement in his termination," he failed to "allege[ ] that any final policymaker was involved in the constitutional deprivation at issue").

That leaves widespread practice. In its "extensive case law on prison healthcare," the Seventh Circuit has "not adopted bright-line rules regarding the quantity, quality, or frequency of conduct needed to prove a widespread custom or practice under *Monell*." Howell v. Wexford Health Sources, Inc., 987 F.3d 647, 654 (7th Cir. 2021). "[I]t is clear," however, "that a single incident—or even three incidents—do not suffice." Wilson v. Cook Cnty, 742 F.3d 775, 780 (7th Cir. 2014). The typical path to proving a widespread practice is to show that the defendant treated *other*, similarly situated individuals in a similar unconstitutional way. Howell, 987 F.3d at 655. While "it is not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to his experience," it is "difficult" because "what is needed is evidence that there is a true municipal policy at issue, not a random event." Grieveson v. Anderson, 538 F.3d 763, 774 (7th Cir. 2008) (cleaned up).

Similarly, at the pleading stage, "complaints that include facts pertaining to multiple inmates are more persuasive that a pattern exists." Couch v. Wellpath LLC, No. 25 CV 1447, 2026 WL 1415054, at *4 (N.D. Ill. May 20, 2026). Nevertheless, "[t]here are many . . . examples where incarcerated plaintiffs have adequately pleaded *Monell* liability alleging only their individual experiences." Howell, 987 F.3d at 655 (collecting cases at n.1).

To that end, courts have allowed plaintiffs to proceed to discovery on Monell claims related to prison healthcare where the plaintiffs alleged their own many experiences with various different employees, along with other facts suggesting the existence of a widespread practice. See, e.g., Couch, 2026 WL 1415054, at *5 (although plaintiff "only discusses particulars specific to his own experiences . . ., when coupled with his allegation of a wider practice, [plaintiff] successfully states a Monell claim against Will County Sheriff's Office"); Haywood v. Wexford Health Sources, No. 16-CV-3566, 2017 WL 3168996, at *4 (N.D. Ill. July 26, 2017) (plaintiff "included specific factual allegations regarding [11] Wexford employees' repeated and consistent indifference to his and other inmates' medical needs"); Harper v. Wexford Health Sources, Inc., No. 14-CV-04879, 2016 WL 1056661, at *2 (N.D. Ill. Mar. 17, 2016) (plaintiff alleged that defendant "maintained cost-cutting and other policies that prevented inmates, including [plaintiff], from receiving adequate medical treatment"); Neely v. Randle, No. 12 C 2231, 2013 WL 3321451, at *1 (N.D. Ill. June 29, 2013) (plaintiff complained about his tooth pain to various officials and medical personnel over the course of many months, only to continually be denied treatment, and he filed a number of grievances that were all ignored by IDOC employees); Ford v. Wexford Health Sources, Inc., No. 12 C 4558, 2013 WL 474494, *1-3, & 9 (N.D. Ill. Feb. 7, 2013) (plaintiff alleged that he made almost daily requests for medical attention over many months, received ineffective medication, faced repeated treatment delays and denials, and filed several grievances, thus supporting the inference of a "widespread practice among Wexford employees of delaying medical treatment").

But plaintiff here, unlike the plaintiffs in those cases, has not alleged enough facts to suggest that his inadequate medical treatment was anything beyond isolated incidents. He does not allege that his treatment was part of a widespread policy to deny adequate medical care to

detainees, or that other pretrial detainees had similarly been denied such care. In fact, he seems to suggest the opposite: he alleges that Division 8 specifically "houses pre-trial detainees with serious medical needs," and that he received various medical services—including multiple surgeries, an x-ray, and occupational therapy. His alleged experience, however frustrating, was generally confined to a handful of interactions with two doctors.

Plaintiff has thus failed to allege enough facts for the court to draw "the reasonable inference that [Dart or the Sheriff's Office] established a policy or practice" related to inadequate medical care. McCauley, 671 F.3d at 618; see also Walker v. Wexford Health Sources Inc., No. 24 CV 9702, 2026 WL 1694526, at *3 (N.D. Ill. June 11, 2026) ("Between the two Wexford-related incidents that Walker complains of (his interaction with defendant Yenkong in July 2023 and his interaction with defendant Ojelade in September 2023), and the fact that Walker does not allege the existence of similarly situated inmates, it is not reasonable to infer that Wexford maintained a widespread policy of denying or delaying treatment."); Jones, 2020 WL 1433811, at *7-8 (dismissing official capacity claim against Dart based on inadequate medical care where plaintiff "only allege[d] a handful of unfortunate incidents limited to his personal experience" and so did not plausibly "allege an unconstitutional policy").

In short, because plaintiff sues Dart in his official capacity but has not plausibly alleged a Monell claim, the court grants Dart's motion to dismiss Count IV, and dismisses it without prejudice.

But that does not quite end the matter. The court finds that Dart, in his official capacity, is still a proper defendant in this action generally (regardless of the result on the two other Counts against him) as it relates to plaintiff's request for injunctive relief. That is because "he would be responsible for ensuring that any injunctive relief" related to the claims against the

doctors and the John Does "is carried out." Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011) (although the prison warden had no personal involvement, he was "a proper defendant since [the inmate plaintiff] s[ought] injunctive relief" related to his § 1983 claim against two doctors, and that claim "present[ed] a plausible account that, if true, would establish that" the doctors were deliberately indifferent "to his need for medical care"). Accordingly, Dart, "the Sheriff, shall remain a defendant, in his official capacity only, for the purpose of carrying out any injunctive relief that might be ordered." Nichols v. St. Clair Cnty. Jail, No. 18-CV-572-JPG, 2018 WL 1617820, at *2 (S.D. Ill. Apr. 4, 2018) (citing Feinerman, 663 F.3d at 315).[2]

**Count V (ADA Claim)**

In Count V, plaintiff alleges that Dart also violated Title II of the ADA. The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). "The ADA is organized into three titles prohibiting discrimination across three major spheres of public life: employment (Title I); public services, programs, and activities (Title II); and public accommodations (Title III)." Lacy v. Cook Cnty., 897 F.3d 847, 852 (7th Cir. 2018). "Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" United

[2] The court further notes that, although Dart is correct that "a mandatory injunction, which is an injunction requiring an affirmative act by the defendant, . . . must be cautiously viewed and sparingly issued," Foster v. Ghosh, 4 F. Supp. 3d 974, 979 (N.D. Ill. 2013) (cleaned up), the court is confident that, if needed, it can craft one that is both appropriate and reasonably drawn under the circumstances. See id. at 984 (directing the prison's medical director to carry out a preliminary (mandatory) injunction that the plaintiff "be evaluated by an ophthalmologist and receive treatment consistent with his or her recommendations").

States v. Georgia, 546 U.S. 151, 154 (2006) (quoting 42 U.S.C. § 12132). And it applies to detainees in county jails. See Lacy, 897 F.3d at 851-54.

Because the ADA is a "comprehensive enforcement scheme[ ] adopted by Congress," a plaintiff need not (and in fact, cannot) seek to enforce a violation of it through § 1983. Keeling v. Lake Cnty., No. 23-CV-3442, 2024 WL 197210, at *6 (N.D. Ill. Jan. 18, 2024) (citation omitted). This means that Monell does not apply, and that plaintiff has correctly asserted his ADA claim as a standalone claim. And Dart—in his "official capacity"—is a proper defendant for it. Indeed, only "public entities are subject to Title II [of the ADA] . . . and . . . such an entity can be held vicariously liable for money damages for the purposeful or deliberately indifferent conduct of its employees." Id. at *3 n.1 (alterations in original) (quoting City & Cnty. of San Francisco v. Sheehan, 575 U.S. 600, 610 (2015)). So "[t]he only proper defendant for ADA . . . claims in the carceral context is the relevant governmental department or agency or its director, acting in his or her official capacity." Id. (cleaned up). Because the "Sheriff is the 'official overseeing operations' at the jail, . . . he is a proper defendant for [plaintiff]'s ADA . . . claims." Id. (citation omitted).

Moving on to the claim itself, to "state a claim under Title II of the ADA," plaintiff need only "plead facts suggesting that he is a 'qualified individual with a disability' who 'by reason of such disability' was 'denied the benefits of the services, programs, or activities of a public entity.'" Brown v. Meisner, 81 F.4th 706, 708 (7th Cir. 2023) (quoting 42 U.S.C. § 12132). "An allegation that the defendants failed to make reasonable accommodations can state a violation of Title II of the ADA." Id.

Plaintiff here has plausibly pleaded a failure-to-accommodate claim. As for a disability, he alleges that he is "qualified individual with a disability . . . because the nature of his injuries is

sufficiently severe and may lead to permanent damage if left untreated or unaccommodated." In moving to dismiss, Dart argues that plaintiff "does not allege facts" supporting that allegation. The court disagrees. Plaintiff alleges in his complaint that his "arm has been continuously fractured since July 2023," and that, as a result, he "experiences severe pain and struggles to perform basic tasks of daily life, including brushing his teeth, handwriting, or carrying a food tray." These allegations plausibly plead a disability under the ADA. See Jaros v. Illinois Dep't of Corr., 684 F.3d 667, 672 (7th Cir. 2012) (a "[d]isability includes the limitation of one or more major life activities, which include . . . caring for oneself").

Plaintiff also plausibly pleads that he was denied reasonable accommodations. Plaintiff alleges that Dart failed to "accommodate [him] by, at a minimum, transferring [him] to a different Division" (he specifically "asked to be transferred to Division 8"), "and facilitating the provision of healthcare untainted by negligence." By failing to do so, plaintiff alleges, Dart "has exacerbated Plaintiff's medical condition and continues to cause unnecessary pain and suffering." These allegations are sufficient to give "fair notice to prison officials that [plaintiff] [i]s suing for failing to accommodate his disabling [arm] condition." Brown, 81 F.4th at 709 (vacating dismissal of Title II ADA claim).

Dart's assertion to the contrary fails. Dart argues that plaintiff's Title II claim must be dismissed because plaintiff's "allegations focus solely on the adequacy of his medical care while detained at the Cook County Jail." According to Dart, such allegations cannot state a cognizable ADA claim: "The Seventh Circuit has made clear that '[t]he ADA does not create a remedy for medical malpractice' or 'incompetent treatment" of an individual's needs.'" (Quoting Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)).

But the Seventh Circuit rejected this very argument in Brown. The plaintiff there (Brown), like plaintiff here, was an inmate who sued prison officials over a disabling injury. Brown, 81 F.4th at 707. Brown alleged that he had injured his knee when he fell at his prior prison, that his prior prison had accommodated his knee's "special needs" by assigning him a low bunk, but that his current prison was denying him an "accommodation" for his knee. Id. at 707-08. So he, like plaintiff here, sued to obtain "necessary accommodations to mitigate [his] severe pain, injuries, [and] exacerbation of [his] known painful condition." Id. at 708 (alterations in original) (quoting Brown's complaint). The district court allowed him to proceed on an Eighth Amendment claim for inadequate medical care, but it dismissed his Title II claim, "writing that Brown had 'not allege[d] any facts that would implicate the ADA' because '[h]e only alleges inadequate medical treatment, which is not a proper claim under the ADA.'" Id. (brackets in original) (quoting district court opinion).

The Seventh Circuit disagreed and vacated, holding that Brown had "state[d]a plausible claim for relief under Title II of the ADA." Id. at 709. In doing so, the court explained that the defendants accepted that Brown's knee injury was a disability, but they argued, like Dart here, that Brown's complaint did not allege "a failure to accommodate that disability," and instead "'focuse[d] solely' on 'the medical care he received for his knee.'" Id. (quoting the defendants' brief). According to the court, the defendants, like Dart here, contended that Brown's ADA claim thus failed under Bryant, "where [the Seventh Circuit] held that the ADA 'does not create a remedy for medical malpractice.'" Id. (quoting Bryant, 84 F.3d at 249).

The court was unpersuaded. It explained that while it agreed with Bryant's statement, and while Brown did allege "Eighth Amendment claims for deliberate indifference to his serious medical needs," "he also alleged failure to accommodate his disability." Id. In particular, the

court continued, Brown alleged that "he asked the prison for 'an ADA reasonable accommodation' to mitigate his 'severe pain' and to prevent 'further harm' to his disabled knee," and that, "[d]espite their knowledge of his condition and his fall," they "'kept him in imminent danger by denying him reasonable accommodations.'" Id. (quoting Brown's complaint). The court held that these "allegations gave fair notice to prison officials that Brown was suing for failing to accommodate his disabling knee condition," and that "the rule of *Bryant* does not bar" that claim. Id.

Plaintiff here, like Brown, alleges not just inadequate medical care but also a failure to accommodate. And plaintiff, like Brown, seeks an accommodation to mitigate his pain and to prevent further harm to his disabled arm. And so this court, like the Brown court, finds that plaintiff has alleged enough to plausibly plead a failure-to-accommodate claim, and that "the rule of *Bryant* does not bar it." Id.; see also Keeling, 2024 WL 197210, at *5 (denying motion to dismiss ADA claim where the complaint did "enough to state a[n] [ADA] claim and give notice"—"[t]he story [wa]s simple: Keeling had a disability, the Sheriff failed to accommodate him, and Keeling suffered an injury as a result").

Because plaintiff's complaint sufficiently states a Title II ADA grievance, the court denies Dart's motion to dismiss Count V.

**Count VI (Rehabilitation Act Claim)**

In Count VI, plaintiff alleges that Dart violated the Rehabilitation Act by failing "to provide reasonable accommodations for [his] obvious disability." The Rehabilitation Act, 29 U.S.C. § 701 et seq., "establishes a comprehensive federal program aimed at improving the lot of the handicapped." Consol. Rail Corp. v. Darrone, 465 U.S. 624, 626 (1984). Section 504 of the Act provides that: "No otherwise qualified individual with a disability . . . shall, solely by reason

of . . . his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

The Rehabilitation Act is "functionally identical" to the ADA: "it requires the plaintiff to allege that (1) he is a qualified person (2) with a disability and (3) the state agency denied him access to a program or activity because of his disability." Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015) (cleaned up). And "although the Rehabilitation Act does not expressly require accommodation, the Supreme Court has [found] a duty to accommodate in the statute generally." Jaros, 684 F.3d at 672 (cleaned up). So "the analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons." Id. at 671 (citations omitted).

Here, plaintiff alleges that the "Cook County Sheriff's Office receives federal funds within the meaning of the Rehabilitation Act, and is thus required to comply with the Rehabilitation Act." Dart does not contest this, which is consistent with his actions in other cases. See Bennett v. Dart, No. 18-CV-4268, 2025 WL 2764518, at *7 (N.D. Ill. Sept. 29, 2025) (collecting cases). Because plaintiff has plausibly pleaded this element, along with the common ADA elements (as discussed above), the court finds that he has plausibly pleaded a claim under the Rehabilitation Act. See, e.g., Twardoski v. Illinois Dep't of Corr., No. 1:22-CV-07163, 2026 WL 2070806, at *5 (N.D. Ill. July 17, 2026) ("The relief available under both the statutes is coextensive, thus as one claim rises or falls, so does the other." (cleaned up)).

The court thus denies Dart's motion to dismiss Count VI.

## CONCLUSION

For the reasons above, the court grants in part and denies in part defendant Dart's motion [32] to dismiss Counts IV, V, and VI. The court grants Dart's motion to dismiss Count IV, but he shall remain a defendant, in his official capacity only, for the purpose of carrying out any injunctive relief that might be ordered. The court denies Dart's motion to dismiss Counts V and VI. Dart is directed to file his answer to the complaint by September 28, 2026.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: August 28, 2026**